SOUTH CENTRAL BELL TELEPHONE COMPANY, Appellant,

v.

PUBLIC SERVICE COMMISSION; Consumer Protection Division, Office of the Attorney General; Commonwealth, Finance and Administration Cabinet; City of Louisville; Kentucky T.A.S. Committee; Federal Executive Agencies; Concerned Citizens and Businessmen of Central Kentucky; Tel-A-Marketing and Communications, Inc.; Pleasureville Baptist Church; Jefferson County, Kentucky, Appellees.

OFFICE OF ATTORNEY GENERAL, Consumer Protection Division and Commonwealth of Kentucky, Finance & Administration Cabinet, Cross-Appellants,

v.

SOUTH CENTRAL BELL TELEPHONE CO., Cross-Appellee.

Court of Appeals of Kentucky.

Aug. 16, 1985.

Rehearing Denied Oct. 18, 1985.

Discretionary Review Denied and Opinion Ordered Published by Supreme Court Jan. 28, 1986.

Ellyn Crutcher, Public Service Com'n, Frankfort, for Public Service Com'n.

Mark W. Dobbins, Asst. Director of Law, Louisville, for City of Louisville.

Dennis K. Muncy, Meyer, Capal, Hirschfeld, Muncy, Jahn & Aldeen, Champaign, Ill., for Kentucky T.A.S. Committee.

Dellon E. Coker, Chief Regulatory Law Office, Terry J.R. Kolp, Sector Trial Atty., U.S. Army Legal Services, Falls Church, Va., for Federal Executive Agencies.

John T. Hamilton, Lexington, for Concerned Citizens and Businessmen of Cent. Ky.

Walker C. Cunningham, Jr., Asst. Jefferson Co. Atty., Louisville, for Jefferson County.

Lively M. Wilson, Bruce F. Clark, David C. Brown, Mark R. Overstreet, Frankfort, W.M. Booker, Jr., Gen. Counsel, Birmingham, Ala., Creighton E. Mershon, Gen. Atty., Louisville, for appellant/cross-appellee.

James D. Brannen, Michael R. Beiting, Consumer Protection Div., Charles D. Wickliff, Monte D. Gross, Finance & Admin. Cabinet, Frankfort, for appellees/cross-appellants.

Before COMBS, WHITE and DUNN, JJ.

DUNN, Judge.

These consolidated utility rate case appeals are from an order of the Franklin Circuit Court entered August 1, 1983, which affirmed in part, and reversed and remanded in part, the order of the Kentucky Public Service Commission in the South Central Bell Telephone Company's 1982 application for increased rates. The company directly appeals from those portions of the trial court's order which affirmed the Commission's rulings favorable to the appellee Public Service Commission. The appellees/cross-appellants, intervenors, the Attorney General, Consumer Protection Division, and the Commonwealth of Kentucky, Finance and Administration Cabinet cross-appeal on those portions of the trial court's order which reversed and remanded on parts of the Commission's order. We affirm on direct appeal, and affirm in part and reverse in part on cross-appeal.

On April 23, 1982, Bell applied to the Kentucky Public Service Commission for a rate and charges adjustment for intrastate telephone service to produce $66 million in additional annual revenues. On Bell's request the Commission conducted hearings in August, 1982. On October 13, 1982, it entered an order, the net effect of which was to increase Bell's annual revenues by $14.47 million.

Bell appealed to the Franklin Circuit Court raising 10 issues: three revenue, five expense and two tax adjustment.

The trial court affirmed the Commission's order on two of the three revenue issues, namely, "rate of return" and "end of year adjustment" and reversed and remanded on the third issue, "repression." It reversed the Commission and remanded to it one of the five expense issues, "license contract," and affirmed the other four, "employer concessions," "advertising expenses," "charitable contributions," and "corporate and community affairs." It affirmed the Commission's order on the two tax issues, "investment tax credit" and "accelerated recovery of excess tax referrals."

On direct appeal Bell complains about each issue the trial court affirmed. It argues that the two of three revenue issues affirmed inappropriately adjusted its revenues upward; that the four of five expense issues affirmed disallowed legitimate and lawful business expenditures; and, that the two tax issues affirmed had the effect of

artifically reducing its revenue requirements.

On cross-appeal the intervenors, appellees/cross-appellants, argue that with respect to "repression," the revenue issue which the trial court reversed and remanded to the Commission, the Commission's action was supported by substantial evidence, and they argue that with respect to the "license contract" expense issue reversed and remanded, Bell failed to meet its burden of proving it.

 Judicial review of the Commission's order is limited to determining whether the Commission acted unreasonably or unlawfully and Bell has the burden of proof, by clear and convincing evidence, to show such unreasonableness or. unlawfulness. *See* KRS 278.430; *Energy Regulatory Commission v. Kentucky Power Co.,* Ky.App., 605 S.W.2d 46, 49 (1980). The term unreasonable can be applied to an administrative agency's decision only when it is determined that the evidence presented leaves no room for difference of opinion among reasonable minds. *Thurman & Meridian Mutual Ins. Co.,* Ky., 345 S.W.2d 635 (1961); *Energy Regulatory Commission, supra.* Determining the weight of evidence presented and the credibility of witnesses is clearly within the exclusive province of the Commission as trier of fact. *Energy Regulatory Commission, supra.* The Commission's decision must be upheld if the evidence introduced by the company was unpersuasive or if substantial evidence supports the Commission's findings. *Id.*

 Bell first argues that the Commission's determination of Bell's "rate of return" is not supported by substantial evidence and is lacking adequate findings of fact. We have reviewed the evidence concerning it and conclude that there is substantial evidence to support the Commission's determination. Only a cursory glance at the Commission's order is all that is required to conclude that the Commission adequately described the underlying factual conclusions upon which it based its decision. We find no error by the trial court in affirming the Commission on this issue.

 It next argues that several actions taken by the Commission concerning the other revenue issue, "end of year adjustment," about which it complains, were unlawful, but nonetheless were affirmed by the trial court. It complains that in contravention of past practices, the Commission unlawfully refused to adjust the company's income to reflect the number of income-producing units in service at the end of the test year, thereby depriving the company of revenue it is lawfully authorized to earn. Its argument is bottomed on the assumption that the Commission had in previous ratemaking cases adjusted Bell's income to reflect the number of income producing units in service at the end of the test year, and that the current "(r)adical departure from (past) administrative interpretation consistently followed cannot be made except for the most cogent reasons." *Utility Regulatory Commission v. Kentucky Water Service Company,* Ky.App., 642 S.W.2d 591, 593 (1982). We have no argument with this principle but we cannot agree that it should be applied here. First, the Commission issued a specific data request to Bell concerning the company's proposed method of adjusting income, thereby notifying Bell that its adjustment method was in question. Second, the Attorney General challenged this method at the hearings. Third, in its order, the Commission noted that the reason it was not adopting Bell's proposed method was because even its own witness did not establish that there was a direct relationship between the end of test year ratio and revenues from basic telephone service. Therefore, we conclude that there was substantial evidence to support the Commission's findings and that its refusal to adopt Bell's method of adjustment was not unreasonable or unlawful. The trial court did not err in affirming the Commission's determination on this issue.

Bell allows that the trial court also erred in affirming 4 of the 5 expense issues before the Commission, i.e. "charity" expense, "advertising" expense, "employee

concession" expense and "corporate and community affairs" expense. It agrees with the trial court's reversal and remand of the "license contract" expense.

Bell insists that its charitable contributions are an operating expense and were unreasonably disallowed. While we concede that some jurisdictions have recognized that charitable contributions constitute legitimate operating expenses for which the utility is entitled to recover, the Commission has adopted the Uniform System of Accounts, pursuant to KRS 278.220, which treats charitable contributions as a non-operating expense for ratemaking purposes. In adopting this method of accounting, we believe that the Commission has made its policy on charitable contributions clear. Bell does not argue that this method of accounting is unreasonable or unlawful or that the Commission was unauthorized to adopt this method, rather it argues that this disallowance is an unwarranted usurpation of the company's management perogatives and was an illegal act. We cannot agree. The Commission determined that charitable contributions are unnecessary expenses in providing utility services and that while the utility is free to make such contributions, the expense should be borne by the stockholders, not the ratepayers. We find no error regarding disallowance of "charity" expense.

A similar argument is made concerning the Commission's disallowance of Bell's "advertising" expense as being unreasonable and unlawful and an invasion of the province of management. Again, we cannot agree. 807 KAR 5.016(4)(2) adopted by the Commission pursuant to KRS 278.-040, expressly disallows institutional and political advertising costs for rate-making purposes. 807 KAR 5.016(5) places the burden of proof on the utility to show that any advertising costs proposed for inclusion in its operating costs fall within the categories enumerated in 807 KAR 5.016(3), or that the advertising is otherwise of material benefit to its ratepayers. The Commission has not disallowed all advertising expenses, as argued by Bell, but only those which do not fall within the categories enumerated in Section 3 or those without material benefit to the ratepayer. The Commission found that there was no evidence that costs of this type of advertising was of any benefit to the ratepayer. But Bell argues that the Commission did not have the authority to promulgate 807 KAR 5.016. This argument has no merit. The Commission is granted broad powers to adopt reasonable rules and regulations by KRS 278.040(3). The regulation in question is simply an exercise of the statutory authority granted to the Commission. We find no error with respect to the disallowance of political and institutional advertising and the trial court's affirmance of this determination.

Bell argues that the Commission's denial of "employee concession" expense was contrary to its own findings and contrary to the record and was "in contravention of well recognized utility ratemaking principles" and that the trial court's affirmation was error. We reject this argument.

The Commission conceded that Bell and its employees may consider concession service an employee benefit but found that it failed to demonstrate that concession services were considered in wage negotiations with its union or that they were a factor in determining nonunion wages. Bell mentions a provision of its labor agreement which permits an employee on leave of absence to continue receiving employee rates for telephone service, but does not direct us to that portion of the record where the labor agreement can be found. We will not search 40 volumes of transcript to find this item. *See* CR 76.12(4)(c)(iii). Assuming arguendo that this document is included in the record, we conclude that the Commission's determination that Bell failed to meet its burden of proof with respect to this expense is justified. If there is additional evidence that concession service is considered in wage negotiation, Bell has failed to direct us to it and therefore, has failed to persuade us in this regard. Again, no trial court error.

■ The last expense issue subject to Bell's complaint is the "corporate and community affairs" expense. The Commission disallowed 30% of Bell's expense incurred in its corporate and community affairs department. Its finding in this regard include the following:

In its Order in Case No. 8150, Bell's previous rate case, the Commission found that Bell had failed to justify the need for and cost of certain functions of the Corporate and Community Affairs Department. Moreover, the Commission placed Bell on notice that it was dissatisfied with Bell's response to requests for information concerning this department and that a detailed analysis of both cost and benefit to the ratepayers would be required in its next rate proceeding

. . .

. . . the Commission is of the opinion that Bell provided insufficient documentation of the expenses and the resulting benefit to the ratepayers of this department.

By referring Bell to Case No. 8150, the Commission provided Bell with a means of determining what specific costs were being questioned. The Commission advised Bell that the requirements on page 15 of the order in No. 8150 must be met before it could expect to be afforded the disallowed expenditures for corporate and community affairs. We conclude that the Commission did make sufficient findings of fact to support its conclusions of law and there was no Commission or trial court error.

■ We also find no error in the trial court's approval of the Commission's treatment of the two tax issues, the first of which is its treatment of the "job development investment tax credit." Bell maintains that the Commission here and consistently in the past ignored the provisions of the Internal Revenue Code which provides a job development investment tax credit ("JDIC") for utilities. I.R.C. s 46(f) (West 1982).

The Commission assumed that Bell's "JDIC" capital was 45% debt and 55% equity, the same ratio of debt and equity as Bell's investor-supplied capital. Because debt cost (interest) is tax deductible, the Commission further assumed that this hypothetical debt portion of the "JDIC" created hypothetical interest cost, and a corresponding income tax deduction. This fictional deduction was then applied to Bell's actual income tax calculations, hypothetically reducing such taxes by more than $1 million. After indulging in this process, the Commission reduced Bell's allowed tax expense (and thus its cost of service) by that amount. In this appeal Bell seeks additional revenue of $2.408 million in order to recapture the reduction in the company's cost of service.

This Commission treatment was held to be correct and consistent with federal laws and regulations creating the credit in *Public Service Commission of Kentucky v. Continental Telephone Company of Kentucky*, Ky., 692 S.W.2d 794, rendered July 3, 1985. The Supreme Court in that case also considered unmeritorious Bell's argument that under this treatment it would run the risk of losing the tax credit.

■ The second tax issue concerns the Commission's treatment of the five year amortization of Bell's "excess tax deferrals". It claims the Commission's treatment was unlawful and in contravention of Internal Revenue Service regulations and urges amortization over the life of the property to which it relates. We disagree.

■ Regulatory commissions have substantial discretion to specify their own accounting treatment of selected ratemaking items. *Pacific Tel. & Tel. Co., v. PVC*, 62 Cal.2d 634, 44 Cal.Rptr. 1, 401 P.2d 353 (Cal.1965). Bell has failed to demonstrate that the Commission's five year amortization amounts to an abuse of discretion. It also has failed to point to any authority which holds that the Internal Revenue Code prohibits the Commission's adjustment. Bell has clearly failed to demonstrate that the Commission's determination was unlawful or arbitrary. In fact it is amply supported by the weight of authorities and the evidence before it. We affirm the trial court as to this issue also.

On cross appeal, the appellees/cross-appellants, the intervenors, the Attorney General and the Finance and Administration Cabinet, argue that the Commission's rejection of the one revenue issue not affirmed, the company's "repression adjustment," was supported by substantial evidence and should not have been reversed and remanded to the Commission. We affirm the trial court in this regard. The Commission found that a repression adjustment in this case was inappropriate and that the utility's stockholders should bear the risk incurred in raising profits and the possible loss of sales. We conclude that *Kentucky Power Company v. Energy Regulatory Commission*, Ky., 623 S.W.2d 904 (1981) is controlling. There our Supreme Court affirmed the trial court's decision to remand that case to the Commission to resolve the issue of "revenue shortfall" and what effect, if any, that would have on the authorized revenue. Therefore, the trial court properly remanded the action to the Commission for a determination of whether Bell met its burden of proof concerning repression and the effect of repression on Bell's authorized rate of return.

The second argument on cross-appeal is that the trial court erred in remanding the case to the Commission on the issue of disallowance of Bell's "license contract" expenses as an item of expense for ratemaking. The Commission found that Bell failed to meet its burden of proving that the license contract services were of any benefit to the rate payers of Kentucky. In a previous ratemaking case, the Commission had informed Bell that "studies and analysis of the specific contract costs that show tangible evidence of both the necessity to the Kentucky ratepayer of the services provided under the license contract and the reasonableness and tangible cost benefit analysis of these individual expenses," would be expected in future ratemaking cases. In the instant case, the Commission found that out of 600 contract services provided through the license contract, Bell presented an analysis of only seven items and that the "value study" intended to show Bell's use of the individual contract items was inadequate to show any benefit to the ratepayers. The trial court concluded: "To have required Bell to produce evidence of over 600 services, when the value of just seven, if properly proven, far exceed the allowable cost, is now held to be unreasonable. Indeed, to require such a standard of proof and as a consequence to disallow all license contract expense was unreasonable and as a consequence unlawful." We cannot agree with the trial court. Bell had been informed that the Commission would require cost-benefit analysis regarding the license contract items. We conclude that the Commission was justified in finding that Bell failed to meet its burden of proof. The trial court erred in remanding this item to the Commission and we reverse its judgment regarding it and affirm the Commission.

In summary we affirm the trial court on all the issues on Bell's direct appeal, namely:

1. "Rate of return revenue" issue affirming the Commission;

2. "End of year adjustment" revenue issue affirming the Commission;

3. "Charity" expense issue affirming the Commission;

4. "Advertising" expense issue affirming the Commission;

5. "Employee concession" expense issue affirming the Commission;

6. "Corporate and community affairs" expense issue affirming the Commission;

7. "Job development investment" tax issue, affirming the Commission; and,

8. "Amortization of excess deferred" tax issue, affirming the Commission.

On cross-appeal we affirm the trial court in reversing and remanding to the Commission the "repression" revenue issue and we reverse the trial court in remanding to the Commission its disallowance of Bell's "license contract" expense. The disallowance should have been affirmed by the trial court.

All concur.